**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert John WEAKLEM, Defendant-Appellant.**

No. 74–3352.

United States Court of Appeals, Ninth Circuit.

May 21, 1975.

Robert W. Ripley, Jr., Federal Defender, (argued) San Diego, Cal., for defendant-appellant.

Herbert B. Hoffman, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Stephen W. Peterson, Asst. U. S. Atty., on the brief, for plaintiff-appellee.

## OPINION

Before CHAMBERS, HUFSTEDLER and SNEED, Circuit Judges.

CHAMBERS, Circuit Judge:

Appellant Robert John Weaklem appeals from his conviction for possession with intent to distribute and conspiracy to possess with intent to distribute cocaine. His only argument here is that the cocaine, seized immediately after his arrest, should have been suppressed.

In June, 1974, Special Agent Eugene Dempsey of the Drug Enforcement Administration (DEA) in Kansas City and Gary Edison, a government informant, arranged to meet with appellant and his codefendant Dennis Wofford in San Diego to negotiate a purchase of cocaine. Upon arriving in San Diego, Dempsey and Edison met with Agent Norman Catalano of the San Diego police to plan the purchase. Dempsey then telephoned Wofford, who told him that because Dempsey and Edison had not arrived when expected, he had assumed that the deal was cancelled, but added that he would attempt to make new arrangements.

At 1:30 a. m. the next day, appellant and Wofford arrived at Dempsey's and Edison's motel room and drove them to appellant's residence. There, appellant stated that things didn't "add up" and the deal "smelled like the pigs" to him, and told Dempsey and Edison that if they were police, he would have them killed. At that point, appellant pulled a pistol from the back of his pants and placed it on a footstool in front of him. Dempsey and Edison were searched and pieces of their identification were photographed to enable appellant to "locate them and have them killed" if it turned out that they were police. Wofford went into the bedroom and returned with a loaded carbine, which he showed to Dempsey.

Appellant then sent Wofford and April Hamlin, a third defendant, who had stayed in a rear bedroom until the identity check was completed, to get one ounce of the cocaine as a sample.

Appellant had told Dempsey and Edison that they were to stay with him until the transaction was completed so that no phone calls could be made. Since Dempsey was unarmed at this time and his location was not known to the other agents, he attempted to delay the negotiations by feigning sickness and expressing a reluctance to go through with the deal in view of the threats made upon him. Dempsey was then returned to his motel room and was later taken to the house of appellant's wife, where he was shown about eight ounces of cocaine in a brown paper sack.

Dempsey telephoned his Kansas City office under the guise of arranging for the purchase money. He advised them to communicate with agent Catalano and

have the money available at the Western Union office that morning. Dempsey, Edison, and appellant then returned to appellant's house. Dempsey had one opportunity to call his office again and inform them of his location. Later, Catalano, posing as a Western Union agent, telephoned and informed Dempsey that the money had arrived. Dempsey and Wofford went to the office to pick up the funds, while Edison remained with appellant at the house. Dempsey went into the office alone and advised agent Catalano of the situation. Catalano decided that immediately after Dempsey's return to the residence, the police and federal agents who had the residence under surveillance should move in and make the arrests.

Dempsey returned to the house with Wofford and positioned himself at the rear of the living room to cut off any retreat by appellant and Wofford. About thirty seconds later, the agents knocked at the door and identified themselves. Wofford started to run to the rear bedrooms where Dempsey believed the guns had been placed. Dempsey drew his gun and ordered Wofford to stop. Edison let the other agents in the front door. Appellant and Wofford were then ordered to lie on the floor, and Dempsey asked Edison where the cocaine was located. Edison indicated a record cabinet about two to four feet from where Wofford was lying. Dempsey went to the cabinet, lifted the lid, and retrieved the bag of cocaine.

Appellant contends that the warrantless arrest and seizure of the cocaine were illegal. There is no question of probable cause; the only issue is whether the officers should have taken the time necessary to obtain a warrant before moving in on appellant's house.

■ As to the arrest, a DEA agent had the authority under 21 U.S.C. § 878(3) to arrest without a warrant:

(A) for any offense against the United States committed in his presence, or

(B) for any felony, cognizable under the laws of the United States, if

he has probable cause to believe that the person to be arrested has committed or is committing a felony . . . ..

Since Dempsey had seen appellant in possession of the cocaine, the first branch of the statute is satisfied.

Although constitutional questions may exist at the fringes of the officer's power under the statute, we are not here presented with a troublesome situation. First, our recent decision in United States v. Watson, 504 F.2d 849, 852 (9th Cir. 1974), where the authorities had probable cause for six days preceding the arrest but did not obtain a warrant, is readily distinguishable. It is unclear if any of Dempsey's communications with his fellow agents prior to his meeting agent Catalano communicated enough facts to give them probable cause. At the earliest, it would have been only a few hours prior to the arrest. Second, the doubt sometimes expressed over whether an officer may enter a private residence to make an arrest without a warrant, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (478–80) (1971), does not reach our facts. Most of the concern focuses on nighttime warrantless entries. See United States v. Blair, 366 F.Supp. 1036, 1039 n. 7 (S.D.N.Y.1973). Also, in our case a federal agent was already inside the house, a fact which vitiates the notion that the entry was an unreasonable intrusion into the sanctity of the private home.

Finally, even if a warrant were otherwise required in this instance, we believe the officers' legitimate fear for the safety of Dempsey and Edison, whose lives had earlier been threatened, placed this situation within the "exigent circumstances" exception to the warrant requirement.

■ With respect to the seizure of the cocaine, it was within two to four feet of where Wofford was lying on the floor, an area within his "immediate control" and thus can be justified as a search incident to the arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23

L.Ed.2d 685 (1968). That appellant and Wofford were at that time apparently subdued by the officers does not change the legality of the seizure. *Cf.* United States v. McDowell, 475 F.2d 1037 (9th Cir. 1973). They were not yet handcuffed, and still could have made a move to the cocaine. Also, there was the prospect that codefendant Hamlin could return at any time and attempt to transport or destroy the evidence. United States v. Curran, 498 F.2d 30, 34–35 (9th Cir. 1974); United States v. Rubin, 474 F.2d 262 (3rd Cir.) cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). In evaluating the validity of this "search," its limited nature must be borne in mind. Dempsey had seen the cocaine in the house a few hours before; Edison knew its exact location. Dempsey simply went to that location and picked it up. On these facts, any interference with appellant's privacy was minimal.

The judgment of conviction is affirmed.