**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald Lee GREEN, Defendant-Appellant.**

No. 75–1289.

United States Court of Appeals, Ninth Circuit.

Oct. 1, 1975.

Raymond C. Youngquist (argued), Pomona, Cal., for defendant-appellant.

Darrell W. MacIntyre, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and EAST, Senior District Judge.*

EAST, Senior District Judge:

Donald Lee Green (Green) appeals his judgment of conviction and sentence to custody for violation of 21 U.S.C. § 846 (conspiracy charge) and 21 U.S.C. § 841(a)(1) (possession of a controlled substance). We affirm.

## FACTS

The salient facts are:

On May 15, 1974 and again on the following days, Green telephoned unin-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

dicted co-conspirator James Rissmiller (Rissmiller) at Ballanger Brothers Automotive, Anaheim, California, and asked Rissmiller to work for him on cars and trucks at Green's residence for $50 per week.

On the following day, Rissmiller drove to the residence at 3712 Monroe Street, Riverside, California, and on arrival Green again told · Rissmiller that he wished him to maintain the cars and trucks at the residence. Later that day Green led Rissmiller to a bedroom of the residence and showed him a box of marijuana and revealed to Rissmiller that he really wanted him to help in the unloading from trucks, re-packing and shipment of marijuana. Green at that time gave Rissmiller a key to the residence and told Rissmiller that he could live either in the front or rear bedroom.

On May 24, 1974, Rissmiller, upon Green's telephone request of two days before, met Green at the residence and signed a lease as lessee for the residence. Thereupon the telephone and utilities at the residence were also put in Rissmiller's name, but in fact the rental and charges for the utilities were to be actually paid for by Green.

On May 26, 1974, Green told Rissmiller that the marijuana came from Mexico and that he and one Schardein, later a co-defendant, unloaded the same from a plane in the desert. Rissmiller on that date and the following· dates of June 15 and July 15 helped in the unloading, weighing, re-packaging, and storing of marijuana at the residence and garage.

Rissmiller was at the residence on May 29, 1974 when Schardein picked up and removed 24 kilos of the marijuana from the residence, and again on June 4, 1974 when Schardein gave Green $5,670, whereupon Green purchased a pickup truck and had Rissmiller disconnect the brake lights.

On July 16, 1974, at about 2:00 a. m., Rissmiller observed Green and Schardein leave the residence with the truck and return about noon with a load of marijuana which Rissmiller helped to unload

and carry into the residence and the re-packaging, weighing, and storing of the same.

On August 1, 1974, at approximately 9:00 a. m., Rissmiller arrived at the residence and helped Green unload 20 bags of marijuana. Green left the residence with the instructions to Rissmiller to re-package the marijuana, at which point Rissmiller "had a change of heart" and contacted Agent Curley of the United States Treasury Department. Later that afternoon Rissmiller and Drug Enforcement Administration (DEA) agents went to the residence. Rissmiller gave his consent to a search of the premises by the agents, and the agents found and seized 12 pounds of marijuana from the rear bedroom and 880 pounds of marijuana from the garage. A large quantity of amphetamine tablets and 400 pounds of marijuana were found and seized in the front bedroom. In the course of the search, brown wrappings on the brick-shaped packages found in the bedroom and garage were torn open in order to expose the contents.

At approximately 11:15 p. m. on that date, Green returned to the residence where he was forthwith handcuffed and arrested. Agent Russell advised Green of his "Miranda rights" and he responded that he understood them. At no time during the handcuffing or the reading of those rights was a gun leveled at Green. Agent Jackson testified that immediately after the administration at Miranda warnings, he, at the time unarmed, took Green into an adjoining bedroom where he asked Green if he had understood each and every right previously related to him by Agent Russell. To this query, Green responded he had. Agent Jackson then informed Green that some marijuana and pills had been discovered on the premises, and accordingly Green was under arrest for violation of federal narcotics laws. Jackson then asked if Green wished to talk about the case; Green replied that he did, and Jackson responded, "Go ahead." Green recounted his participation in the smuggling operation by admitting that a Dodge truck would

show up at the residence and he would remove marijuana from it and then package, weigh, and store the marijuana. Green further stated that he would receive a phone call from an unknown person who would instruct him to take loads of marijuana to certain locations. Green also admitted that he received $1.00 per block for weighing, packaging, and delivering the marijuana.

Green testified that when he returned to the residence, he was surprised and frightened by DEA agents who were drinking beer and shouting threats at him; further, that the room was very warm and without ventilation, all of which caused him to involuntarily make the incriminating statements.

Donald Wilson, who lived with Green during the middle of May, 1974, testified that he heard Green state that the "stuff" he was getting was coming in about 10 to 20 miles in the desert outside of Riverside and that it was necessary to have a four-wheel drive vehicle to pick it up.

Green moved for the suppression as evidence of the contraband found and seized pursuant to the unreasonable warrantless DEA agents' search of the home and garage, as well as Green's confession as being coerced and involuntarily given.

The District Court following a full evidentiary hearing found that Rissmiller held unrestricted joint access to the premises as a co-user with authority to freely and openly enter and use the same for personal and work purposes as outlined and concluded that Rissmiller had authority to grant his third party consent to the search. Based thereon the District Court denied the motion to suppress as to the contraband found and seized in the rear bedroom (12 pounds) and garage (880 pounds) and granted the motion to suppress the amphetamines and 400 pounds of marijuana found and seized in the front bedroom which was determined to be Green's bedroom.

The District Court further found from the facts that Green's confession was knowingly, freely, and voluntarily given and concluded to deny the suppression of the same.

## ISSUES

Green's contentions of error embrace the following five issues:

1. Did the District Court err in refusing to suppress the evidence seized from the garage and rear bedroom because Rissmiller could not give effective third party consent to search?

2. Was Rissmiller's third party consent to search the premises ineffective to authorize the agents to tear open the brown wrapping on the brick-shaped packages found in the bedroom and garage?

3. Was Green's confession improperly admitted because (a) he was first confronted with evidence later held to be inadmissible (i. e., the contraband found in his bedroom); or (b) because the confession was coerced by the conduct of the DEA agents?

4. Did the District Court err in admitting Green's out of court admission to Wilson?

5. Was the evidence sufficient to sustain the conviction?

## DISCUSSION

*Issue 1:*

In *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the court reasoned and held at 171, 94 S.Ct. at 993:

"[T]hat when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.[7]"

[7] Common authority is, of course, not to be implied from the mere property interest a

third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) *but rests rather on mutual use of the property by persons generally having joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (Italics supplied).

The adoption of that rule by the Supreme Court validated the rationale and holding in *Gurleski v. United States,* 405 F.2d 253, 260–62 (5th Cir. 1968), *cert. denied,* 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969). This court in its decision in *United States v. Murphy,* 506 F.2d 529 (9th Cir. 1974), taking its lead from *Gurleski,* dealt with a factual third party leave of access situation similar to but more restricted than Rissmiller's. In *Murphy,* one Tucker, an employee of Murphy, the tenant of a warehouse, was given a key to the warehouse by Murphy only on occasions Tucker was to work at the warehouse. This court concluded at 530:

> "[T]hat Tucker's custody of the key gave him sufficient dominion over the premises to enable him to grant the necessary consent. Since Murphy himself put the premises under the immediate and complete control of Tucker, who voluntarily consented to the search, we hold that the search was not unreasonable."

*See also United States v. Pravato,* 505 F.2d 703, 704 (2d Cir. 1974).

■ In this case, Rissmiller was in constant possession of the key, held in his own name the lease for the premises

and the account for the utilities, access for the work of the venture, and personal use of the residence and the rear bedroom. We conclude that the District Court's findings that Rissmiller held joint control, authority and free exercise of access to the residence, rear bedroom and garage which were searched pursuant to his voluntarily given consent were amply supported by relevant evidence, and the District Court's conclusion that Rissmiller's consent was a binding consent to the search on the part of Green was valid at law.[1] *United States v. Phelps,* 490 F.2d 644, 646 (9th Cir. 1974); *Matlock, supra,* and *Murphy, supra.* We hold that the agents' search of the residence and rear bedroom and the garage was not unreasonable, and the District Court did not err in the context of Issue 1.

*Issue 2:*

■ Green premises this issue of the unauthorized breaking of the brown paper wrappings upon this court's decision in *Corngold v. United States,* 367 F.2d 1 (9th Cir. 1966). Green's reliance upon *Corngold* is misplaced. It is manifest from a mere glance at the common carrier of goods-shipper relationship involved in *Corngold* that the decision is inapposite. This court's decision in *Nelson v. People of State of California,* 346 F.2d 73 (9th Cir. 1965), *cert. denied,* 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965), appropriately disposes of Issue 2, adversely to Green. *Nelson* held at 77 that a co-tenant's permission to search premises authorizes the seizure and opening the well known marijuana symbol of brown paper wrapped brick-shaped packages in plain view. The District Court did not err in the context of Issue 2.

*Issue 3:*

We conclude from the entire record that the District Court's findings and conclusions:

> a factual question and, so too, is the question of *appearance of authority* to give it . . . .' " We do not reach nor express any opinion on and wholly reserve that issue of "reasonable cause to believe" authority to give a third party consent to a future situation.

---

1. The Government also urges that the "focal point of appellate review is not upon [Rissmiller's] actual authority, but rather upon the reasonableness of the agent's perception of that authority. As was stated in *United States v. Sells,* 496 F.2d 912 (7th Cir. 1974), 'consent is

(a) Green's confession was not a "product" of Green's confrontation with the amphetamines and 400 pounds of marijuana seized from his bedroom, which seizure was later determined to be illegal; and

(b) Green's confession was freely, knowingly, and voluntarily given and not coerced;

are each supported by relevant evidence and applicable law. *Allen v. Cupp,* 426 F.2d 756, 759 (9th Cir. 1970). *See, e. g., United States v. Johnson,* 474 F.2d 6, 7 (9th Cir. 1973). *United States v. Moreno-Lopez,* 466 F.2d 1205, 1206 (9th Cir. 1972), and *United States v. Bacall,* 443 F.2d 1050 (9th Cir.), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 565, 30 L.Ed.2d 557 (1971).

 We reject Green's naive contention that his confession of illegal drug trafficking would probably have been valid if he had been confronted with only the 880 pounds of marijuana found in the garage and the 12 pounds found in Rissmiller's bedroom, but when the illegally seized amphetamines and 400 pounds of marijuana were added to the pot, his confession became the "fruit of the poisoned tree" and "the product" of the illegally seized contraband. We conclude that the role of suppressed evidence in producing Green's confession "must be considered *de minimis.*" The District Court did not err in the context of Issue 3.

*Issues 4 and 5:*

■ 4. Green's out of court admission was admissible. *Sablan v. People of Territory of Guam,* 434 F.2d 837, 840 (9th Cir. 1970). In any event any error was harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The court's instructions were in all respects sound and adequate. *Fineberg v. United States,* 393 F.2d 417, 419–20 (9th Cir. 1968), and *Cook v. United States,* 354 F.2d 529, 532 (9th Cir. 1965).

5. The evidence as a whole amply supports the finding of guilty on the conspiracy and substantive counts. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *White v. United States,* 394 F.2d 49, 53–54 (9th Cir. 1968); and *United States v. Manuel-Baca,* 421 F.2d 781, 782 (9th Cir. 1970).

The District Court did not err in the context of Issue 4 or Issue 5.

Green's judgment of conviction and sentence of custody as entered by the District Court is affirmed.

The mandate hereon shall issue forthwith and no petition for rehearing will be entertained. Fed.R.App.P. 2.

Affirmed.