THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL EUGENE ROBBINS, Defendant-Appellant.

Fifth District    No. 76-499

Opinion filed November 4, 1977.

Jack A. Strellis, of Gomric & Strellis, of Belleville, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

After a jury trial in the Circuit Court of St. Clair County, defendant, Carl Eugene Robbins, was convicted of the unlawful possession of a substance containing cannabis and sentenced to one to three years in the penitentiary. Defendant appeals, arguing that the trial court should have granted his motion to suppress evidence on the ground that it was obtained through a search which violated his fourth amendment rights and his motion to suppress a confession as the product of the illegal search.

A two-count indictment was returned against the defendant on August 22, 1975. Count I charged him with possession of 124.7 grams of a substance containing cannabis, in violation of section 4(d) of the Cannabis Control Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 704(d).) Approximately 90 percent of the substance mentioned in count I consisted of cannabis seeds which had been discovered in a closed dresser drawer by the police during a warrantless search of defendant's room. Count II of the indictment charged that defendant had produced Cannabis sativa plants, in violation of section 8 of the Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 708.) The cannabis plants were also seized during the aforementioned search. Defendant pleaded guilty to count II of the indictment, a misdemeanor, and was fined therefor; he pleaded not guilty to count I, the only charge involved in this appeal. In regard to count I, defendant filed a motion to suppress evidence, that is, the 124.7 grams of cannabis, and a motion to suppress a confession. The following evidence was adduced at the hearing on defendant's motion to suppress evidence.

The defendant testified that on July 8, 1975, he resided with his girl

friend on the second floor of a two-story building located at 405 West Main Street, Mascoutah, Illinois. Defendant's parents also lived in the house, apparently on the first floor. Defendant said that he was alone in his room on the morning of July 8 when he heard a noise downstairs. He, therefore, walked out of his room and into the hallway to investigate. At the bottom of the stairs stood a policeman who pointed a gun at the defendant and ordered him to come down the stairs. After complying with the officer's demand, defendant was handcuffed and taken outside, where another officer was waiting. The three men then reentered the house, walked up the stairs and into defendant's room. Defendant stated that the policemen searched his room thoroughly and found cannabis plants and seeds. The seeds were discovered in a closed dresser drawer.

During cross-examination, defendant said that immediately before hearing the noise downstairs he had looked through his window and seen a police officer "[l]ooking towards the street talking to a guy in the electric truck." The officer did not say anything to defendant. Defendant also stated that when he and the police officers entered his room there were five or six containers in the window. Growing in the containers were plants which defendant knew to be cannabis.

William G. Beatty testified that he was one of the police officers who had arrested defendant on July 8. He stated that approximately two days before the arrest he had observed plants growing in defendant's window and had studied them through binoculars. He also said that photographs of the plants were taken. Based upon his experience and training. Officer Beatty decided that the plants were cannabis. Thereafter, he and another officer, Louis E. Ashby, continued observing defendant's home, waiting for someone to touch the plants or otherwise exhibit control over them. At 9 a.m. on July 8, Officer Beatty saw the defendant begin removing the plants from his window. Beatty shouted at defendant, telling him not to touch the plants. Defendant, however, ignored the officer and "just moved a few more in on the floor." Beatty said that Officer Ashby entered defendant's building through the front door while he, Beatty, ran around the building to make sure that no one escaped through a rear exit. A short time later, Officer Beatty walked to the front door and entered the building. As he did so, he saw Ashby at the bottom of the stairs, handcuffing the defendant. Beatty's testimony concerning the search which followed does not vary in any significant way from defendant's account. He further stated that when he and Officer Ashby searched defendant's room, defendant was standing 6 to 8 feet away from the dresser wherein the cannabis seeds were found.

Officer Louis E. Ashby also testified at the suppression hearing. He said that he had noticed the cannabis plants in defendant's window several days, perhaps as many as four or five days, before the arrest. Ashby stated

that at some time prior to July 8, Officer Beatty had applied for a search warrant at the office of the State's Attorney. An Assistant State's Attorney informed Beatty that he had probable cause for a search, but advised him to continue watching defendant's house and to make an arrest when someone touched the plants. Ashby's testimony concerning the arrest of defendant and subsequent search was virtually identical to Officer Beatty's. He also stated that he handcuffed defendant's hands behind him when he took defendant into custody at the bottom of the stairs.

Officer Beatty was then called as a rebuttal witness for the defense. He stated that although he had called the State's Attorney's office seeking advice concerning the case, he had not applied for a search warrant.

■■ The first issue which we must consider is whether the search of defendant's room was incident to arrest. Because a search incident to arrest must be limited to the arrestee's person and the area into which he might reach in order to grab weapons or evidentiary items (*Chimel v. California*, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969)), it is impossible to determine whether such a search was properly limited in scope without first determining when and where the arrest was made.

■■ An arrest involves the following three elements: authority to arrest, assertion of that authority with intent to effect an arrest, and restraint of the person to be arrested. (*People v. Ussery*, 24 Ill. App. 3d 864, 321 N.E.2d 718 (3d Dist. 1975).) No formal declaration of arrest is necessary for a valid arrest to occur. (*People v. Huggin*, 25 Ill. App. 3d 409, 323 N.E.2d 370 (1st Dist. 1974).) All of the foregoing elements were present in the instant case when defendant's liberty was restrained at the bottom of the stairs. Therefore, we are of the opinion that defendant was arrested at that time and that the search of defendant's room greatly exceeded the permissible scope of a search incident to his arrest.

Nonetheless, the State argues—in fact, it assumes *a priori*—that defendant was not arrested until after he was forced to accompany the police officers upstairs and into his room. We simply cannot accept this misinterpretation of the facts. We also think that the State's position is untenable for the following additional reasons.

■■■ First, we question whether the police officers had the right to enter defendant's room at all. They did so only because they had previously viewed cannabis plants from outside defendant's window and, as the Supreme Court has pointed out:

"[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle * * * that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish

the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. [Citations.]" (*Coolidge v. New Hampshire*, 403 U.S. 443, 468, 29 L. Ed. 2d 564, 584, 91 S. Ct. 2022, 2039-2040 (1971).) However, we need not decide whether the foregoing principles apply here, as both defendant and the State have assumed that the initial entry into defendant's room was justified.[1]

Second, even assuming that the police officers themselves were justified in entering defendant's room, they were not justified in taking defendant with them. In doing so, the officers were attempting to bend the *Chimel* rule to allow them to search beyond the area of defendant's immediate control. An analogous situation was presented in *United States v. Griffith*, 537 F.2d 900 (7th Cir. 1976). In that case, police officers entered defendant's motel room just as defendant was exiting the bathroom in his undershorts. The officers immediately placed defendant under arrest, ordered him to dress and allowed him to move about the room in order to pick up his clothing. As defendant dressed, one of the officers opened a brown paper sack which had been lying on defendant's bed and saw that it held "white tablets." In deciding that this search was unreasonable, the court said that if the sack had been within the area of defendant's immediate control it was only because the officers had deliberately chosen to allow defendant to move near it, and that:

"Just as '*Chimel* does not permit the arresting officers to lead the accused from place to place and use his presence in each location to justify a "search incident to arrest,' " [citation] it does not permit the officers to achieve the same result by ordering the accused to dress and then not bringing him his clothes, thus requiring him to move about the room * * *. The officers could have handed him whatever clothes he needed in order to dress. They could then have posted a guard on the room, obtained a search warrant, and later returned to search the room pursuant to the warrant." 537 F.2d 900, 904.

■■ Finally, assuming that the police officers were justifed in taking defendant into the room, we think the search was improper because

---

[1] Defendant apparently assumes that in pleading guilty to the production of cannabis plants, he admitted that the entry into his room was justified and that he is, therefore, precluded from contesting the point on this appeal. Although defendant has probably waived the issue as a ground for overturning his guilty plea (see *People v. Dennis*, 34 Ill. 2d 219, 215 N.E.2d 218 (1966); Annot., 20 A.L.R.3d 724 (1968)), we think that he could properly have raised it here in attempting to show that the search of his dresser drawer was illegal. See, *e.g., People v. Hopkins*, 52 Ill. 2d 1, 284 N.E.2d 283 (1972) (use of collateral estoppel against criminal defendant severely restricted); *Turzynski v. Liebert*, 39 Ill. App. 3d 87, 350 N.E.2d 76 (1st Dist. 1976) (collateral estoppel confined to issues actually litigated in prior action).

defendant's hands were cuffed behind his back at the time. The scope of a search incident to arrest is limited to the area within which a suspect may reach, and, obviously, the reach of an unbound suspect is greater than the reach of one who has been handcuffed. Several Federal decisions support this common-sense notion, at least by implication, and we have found none which reject it. See *United States v. Weaklem*, 517 F.2d 70 (9th Cir. 1975); *United States v. Ciotti*, 469 F.2d 1204 (3d Cir. 1972); *United States v. Patterson*, 447 F.2d 424 (10th Cir. 1971), *cert. denied*, 404 U.S. 1064, 30 L. Ed. 2d 752, 92 S. Ct. 748 (1972); *United States v. Mehciz*, 437 F.2d 145 (9th Cir. 1971), *cert. denied*, 402 U.S. 974, 29 L. Ed. 2d 139, 91 S. Ct. 1663 (1971); *United States v. Baca*, 417 F.2d 103 (19th Cir. 1969).

For all of the reasons stated above, we find that the search of defendant's closed dresser drawer exceeded the permissible scope of a search incident to his arrest.

The next issue which we must consider is whether defendant's confession should have been suppressed as "fruit of the poisonous tree." The State argues that defendant has waived this issue because he did not mention it in his motion to suppress the confession. The State further asserts that defendant's failure to mention the theory caused the State to refrain from offering evidence to show that the confession was obtained "by means sufficiently distinguishable to be purged of the primary taint."

■■ In order for error to be brought to the attention of a reviewing court it must be preserved by making appropriate objections and including these objections in the post-trial motion. (*People v. Buckley*, 40 Ill. App. 3d 750, 353 N.E.2d 4 (4th Dist. 1976); *People v. Estes*, 37 Ill. App. 3d 889, 346 N.E.2d 469 (4th Dist. 1976).) In the instant case, defendant's written motion sought suppression of his confession solely on the ground that it was involuntarily made. However, at the conclusion of the hearing on this motion, defendant moved to consolidate it with his earlier motion to suppress evidence "on the basis that it [was] defendant's assertion that the arrest was illegal and, therefore, the confession should be suppressed." The trial court granted defendant's motion to "incorporate" the two motions. Under these circumstances, we feel that the State was sufficiently apprised that defendant intended to rely upon the "fruit of the poisonous tree" theory on appeal. As defendant also raised the theory in his post-trial motion, he has properly preserved it for review. Even if we were to hold otherwise, we would consider the issue under the plain error rule. See Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).

In *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), the Supreme Court said that:

"We need not hold that all evidence is 'fruit of the poisonous tree'

simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.

■■ The question whether a confession has been obtained by "exploitation" of some prior illegal police action depends upon all the facts of each case. Among the factors which must be considered are whether the *Miranda* warnings were given, the temporal proximity of the primary illegality and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. (*Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975).) Another important factor is simply the type of official misconduct involved. Confronting a suspect with illegally seized evidence tends to induce a confession by demonstrating the futility of remaining silent. On the other hand, the custodial environment resulting from a false arrest is merely one factor to be considered in determining whether a confession is inadmissible. (See *People v. Johnson*, 70 Cal. 2d 541, 75 Cal. Rptr. 401, 450 P.2d 865 (1969), *cert. denied*, 395 U.S. 969, 23 L. Ed. 2d 758, 89 S. Ct. 2120 (1969).) Once the defendant establishes the "primary illegality" and shows its connection to what are alleged to be the fruits of the illegality, the prosecution then has the burden of establishing by clear and convincing evidence that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint. *Brown v. Illinois; People v. Wilson*, 60 Ill. 2d 235, 326 N.E.2d 378 (1975); *People v. Black*, 52 Ill. 2d 544, 288 N.E.2d 376 (1972).

■■ Although defendant in the instant case was given the *Miranda* warnings, and the "primary illegality" involved does not, in our opinion, amount to flagrant misconduct, the confession must be suppressed. Defendant was present when his room was searched and was, of course, aware that the police officers discovered cannabis in his dresser. A few hours later, he confessed to having possessed a substance containing cannabis. Nothing in the record belies the obvious conclusion that defendant confessed only because he had already been caught "red-handed."

The State, citing *United States v. Green*, 523 F.2d 968 (9th Cir. 1975), argues that the role of the illegally seized cannabis seeds in producing defendant's confession must be considered *de minimus* because defendant was also aware that the police had seized the cannabis plants. In considering this argument, we must assume that the seizure of the

plants was justified, a proposition upon which we have already expressed some doubt.

In the *Green* case, defendant argued that his confession of participation in a smuggling operation should have been suppressed because it was the product of the illegal seizure of 400 pounds of marijuana and a large quantity of amphetamines. At the time when defendant confessed, however, he was also confronted with 892 pounds of legally seized marijuana. In affirming defendant's conviction, the court said:

> "We reject Green's naive contention that his confession of illegal drug trafficking would probably have been valid if he had been confronted with only the 880 pounds of marijuana found in the garage and the 12 pounds found in Rismiller's bedroom, but when the illegally seized amphetamines and 400 pounds of marijuana were added to the pot, his confession became the 'fruit of the poisoned tree' * * *. We conclude that the role of the suppressed evidence in producing Green's confession 'must be considered *de minimus*'." 523 F.2d 968, 972.

Undoubtedly, the content of the defendant's confession in *Green* was unaffected by the illegally seized evidence. Here, however, defendant specifically admitted having possessed both cannabis plants and seeds, and we consider it highly likely that defendant mentioned the seeds only because he knew that they had already been discovered in his possession. For this reason, we feel that the instant case is distinguishable from *Green*.

Having decided that the evidence which produced defendant's conviction should have been suppressed, we need not consider the other issues raised by defendant. For the reasons stated above, the decision of the Circuit Court of St. Clair County is reversed.

Reversed.

CARTER, P. J., and JONES, J., concur.