**Ronald Gene PHILLIPS,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. 87–290.

Supreme Court of Wyoming.

Aug. 18, 1988.

Steven E. Weerts, Sr. Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Michele J. Neves, Legal Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant Ronald Gene Phillips appeals from his convictions of aggravated assault and battery in violation of W.S. 6–2–502(a)(iii) and of escape in violation of W.S. 6–5–206(a)(ii)(B).

We affirm in part, reverse in part, and remand.

Appellant raises the following issues:

1. Did the Court err by failing to instruct the jury on Appellant's theory of the case?

2. Did the Court err by refusing to instruct the jury on Appellant's definition of official detention in regard to the escape charge?

In the early morning hours of April 24, 1987, after a considerable amount of drinking with friends at a local bar, appellant entered the trailer house of William Gillam located in Riverton, Wyoming. Mr. Gillam, hearing strange noises, grabbed a rifle and encountered appellant as he walked through the front door of the Gillam residence. Appellant informed Mr. Gillam that other persons lived at that residence, not Mr. Gillam. Mr. Gillam responded by advising appellant that appellant had entered his home and that he should leave immediately.

When appellant failed leave the trailer, Mr. Gillam struck the side of appellant's head with the butt of his rifle. A struggle ensued, and appellant gained control of the rifle. Receiving no response from Mr. Gillam as to why he had hit him, appellant raised the rifle to his shoulder, pointed the gun at Mr. Gillam, and told Mr. Gillam that he was going to shoot him. However, appellant lowered the rifle and told Mr. Gillam to go to bed. Mr. Gillam complied with these instructions and went into his bedroom.

Approximately fifteen minutes later, Mr. Gillam asked appellant if he was going to leave his home. There was no response because appellant had fallen asleep on the davenport with the gun across his lap. Mr. Gillam attempted to call the police but was unsuccessful in contacting them. Instead of again trying to contact the police himself, Mr. Gillam called a neighbor and asked her to call the police.

While appellant remained asleep on the davenport, Officer McAuslan of the Riverton police department met Mr. Gillam outside the trailer. After talking to Mr. Gillam, Officer McAuslan entered the trailer house, moved the gun away from appellant, and put a handcuff on appellant's arm without stirring appellant. Officer McAuslan then woke appellant and told him that he was a police officer.

These comments by the officer apparently awakened appellant, and he suddenly made a run for the front door. After a brief struggle between appellant and Officer McAuslan, appellant ran from the scene.

Appellant was arrested later that morning and charged with aggravated burglary, aggravated assault and battery, interfering with a peace officer, and escape. On August 17, 1987, a two-day jury trial began. At the conclusion of the trial, the trial judge granted appellant's motion for a judgment of acquittal regarding the aggravated burglary charge, and the jury found appellant not guilty of interference with a peace officer. However, the jury did find appellant guilty of aggravated assault and battery and escape. On November 2, 1987, appellant was sentenced to the Wyoming State Penitentiary for a term of not less than five years nor more than ten years for his aggravated assault and battery conviction and for a term of not less than one year nor more than three years for his escape conviction. These sentences were to be served concurrently. Appellant was given thirty-four days' credit for time already served to be taken off his maximum sentence.

Appellant asserts that the trial court committed reversible error when it refused to instruct the jury on his theory that he was not guilty of the charges alleged but that he was guilty of the offenses of criminal trespass and resisting arrest. According to appellant, this instruction was necessary because he did not want to portray to the jury that his actions were proper; he simply argues that he was guilty of different crimes than those with which he was charged.

■ The law in Wyoming is well established with respect to instructing the jury on a defendant's theory of the case. The trial court's duty is to instruct the jury on general principles applicable to the case. *Roose v. State,* 759 P.2d 478 (Wyo.1988). However, the trial court may properly refuse instructions which include incorrect or inapplicable statements of the law or those instructions which are argumentative or unduly emphasize a particular aspect of a case. *Miller v. State,* 755 P.2d 855 (Wyo. 1988); *Evans v. State,* 655 P.2d 1214 (Wyo. 1982). If any part of an instruction is erroneous, the trial court may reject the entire instruction. *Griffin v. State,* 749 P.2d 246 (Wyo.1988).

In the present case, appellant offered the following instruction:

The defense in this case believes that the Defendant, Ronald Phillips, should not have been charged with the four (4) crimes that are currently before the jury, but should have been charged with the crimes of criminal trespass and resisting arrest.

A person is guilty of criminal trespass if he enters or remains on or in the land or premises of another person, knowing he is not authorized to do so, or after being notified to depart or to not trespass. For purposes of criminal trespass notice is given by personal communication to the person by the owner or occupant.

A person is guilty of resisting arrest if he knowingly resists arrest by a peace officer while that peace officer is engaged in a lawful performance of his official duties.

In the event that you find that the State has not proven beyond a reasonable doubt any of the four (4) crimes charged, the State is not precluded or barred from filing new charges against the Defendant charging him with criminal trespass and resisting arrest.

■ Examining this instruction on its face, we conclude that it is argumentative, incorrect, and misleading. The statement indicating appellant should not have been charged with the four crimes alleged in this case effectively implies that appellant was innocent of the charges. Such a statement is argumentative, and it is not a fair and impartial statement of the issues. The proposed instruction also conveys the proposition that the State could have charged appellant with either of the two crimes of aggravated assault and battery or criminal trespass, but not both. If the State desired to do so, it could have charged appellant with both crimes. The proposed instruction therefore included incorrect statements of the law which potentially could have misled the jury.

Accordingly, we hold that the trial court properly excluded appellant's proposed jury instruction regarding his theory of the case.

Appellant also contends that the trial court erred when it refused to instruct the jury on his definition of "official detention" and that the trial court erred when it admitted the State's instruction regarding that term with respect to his escape charge. According to appellant, his instruction properly defined the term as used in the applicable statutes and under Wyoming case law, while the State's instruction incorrectly defined that term.

The instruction given to the jury which defined the word "official detention" provided as follows:

" 'Official detention' means arrest ... or detention in any manner and in any place for law enforcement purposes." (W.S. § 6–5–201(a)(i))

For an arrest to take place the officer need only subject the person he confronts to some kind of control and deten-

tion amounting to a restriction upon his freedom. The officer arrests when he, with the present ability to do so, exerts his will upon the citizen in a way which indicates an intention to detain him or take him into custody—he arrests him when he issues an order in a way which causes the subject to believe he must obey the command which, if obeyed, results in a restriction upon freedom. The officer arrests when, in order to detain, he touches his subject and lays hands on him. Any laying on of hands or any detention coupled with an act or attitude indicating the officer's apparent intention to assume physical control or to take the subject into custody is also an arrest.

The rejected instruction submitted to the trial court by appellant concerning the definition of "official detention" provided:

"Official detention" means arrest.

An arrest assumes custody or control of the arrested person and generally implies an actual restraint or detention of the person arrested or a significant restraint of his freedom of movement. An arrest is complete when: 1) an intention and power to arrest are made known to the subject of the arrest; and 2) this is followed by submission by the subject being arrested.

Since the trial court may reject an entire instruction if any part of that instruction is erroneous, *Griffin*, 749 P.2d 246, it is necessary for us to look initially at the applicable statutes and state case precedent to determine whether either of these instructions contained a proper enunciation of the law in Wyoming.

In *Deloges v. State ex rel. Wyoming Workers' Compensation Division*, 750 P.2d 1329, 1331 (Wyo.1988), we stated:

Our general rules of statutory construction are well settled. If the language of a statute is clear and unambiguous, we must abide by the plain meaning of the statute, but where a statute is ambiguous, the court will resort to general principles of statutory construction in an attempt to ascertain legislative intent. Furthermore, it is a fundamental rule of statutory interpretation that all portions of an act must be read in pari materia, and every word, clause, and sentence must be construed so that no part is inoperative or superfluous. Additionally, we have held that this Court must assume that the legislature did not intend futile things and that statutes should not be interpreted in a manner producing absurd results.

(Citations omitted.)

■ With these rules of construction in mind, we consider the statutes which are germane in this case. W.S. 6–5–206 provides:

(a) A person commits a crime if he escapes from official *detention*. Escape is:

(i) A felony punishable by imprisonment for not more than ten (10) years, if the *detention* is the result of a conviction for a felony;

(ii) A felony punishable by imprisonment for not more than three (3) years, a fine of not more than three thousand dollars ($3,000.00), or both, if the *detention* is the result of:

(A) A conviction for a misdemeanor; or

(B) An arrest or charge for a crime.

(Emphasis added.) W.S. 6–5–201(a)(ii) defines "official detention" as follows:

"Official detention" means arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. "Official detention" does not include supervision on probation or parole or constraint incidental to release or bail[.]

Giving the language of these statutes its plain and ordinary meaning, it is clear that, for one to be found guilty of escape, he must be in "official detention" at the time of his flight. As used in the statutes, "official detention" includes that time when a person has been put under arrest or is under the described detention as particular-

ly enumerated in W.S. 6–5–201(a)(ii).[1] Therefore, under the circumstances of this case, it is necessary for us to determine whether Officer McAuslan had made an arrest at the time of appellant's flight.[2]

We have set out on numerous occasions the elements which constitute an "arrest." In *Rodarte v. City of Riverton*, 552 P.2d 1245, 1250 (Wyo.1976), we stated:

"An arrest is the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested. "To effect an arrest, there must be actual or constructive seizure or detention of the person arrested, or his voluntary submission to custody, and the restraint must be under real or pretended legal authority ..." 5 Am Jur 2d, Arrest § 1, p. 695.

Quoted in *Neilson v. State*, 599 P.2d 1326, 1333 n. 4 (Wyo.1979), cert. denied 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980).

In this instance, the instruction defining the word "arrest" within the term "official detention" correctly stated that, for an arrest to take place, the officer must have some kind of control or detention amounting to a restriction of freedom over the person being arrested. However, that same instruction goes on to improperly define "arrest" in terms of a present ability to arrest or an intention to detain by the arresting party, a belief of a detention by the party to be arrested or an impending arrest, a touching or a laying of the hands on the party to be arrested by the person attempting to make the arrest, and a touch-

ing or a laying of the hands or any detention on the party to be arrested coupled with an act or attitude of the arresting person indicating an intention to assume physical control or custody of the person to be arrested.

■ The instruction submitted to the trial court by appellant improperly defines the word "arrest" as used within the term "official detention." While that instruction properly states that an arrest assumes custody or control of the arrested party and implies an actual restraint of freedom of movement or detention of that party, it incorrectly states that "official detention" as used in W.S. 6–5–201(a)(ii) is limited solely to an arrest and that an arrest is complete when an intention and power to arrest are made known to the subject of the arrest by the arresting party, followed by submission of the subject to be arrested.

■ In Wyoming, an arrest is effectuated when there is the taking, seizing, or detaining of the person of another by touching or putting hands on him, or by any act which indicates an intention to take him into custody and which subjects him to the actual control and will of the person making the arrest, or by the consent of the person to be arrested. Such arrest *must also* be made under real or pretended legal authority *and* result in the actual or constructive seizure or detention of the person arrested or in his voluntary submission into custody. A person cannot be said to be under arrest when merely an intention or attempt to take, seize, or detain him occurs, resulting in no seizure or control over the person.

1. We also recognize that the crime of interference with a peace officer is defined by the legislature as follows:

A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

W.S. 6–5–204(a). If a person did not need to be *under arrest* to constitute an "official detention"

as used in W.S. 6–5–201(a)(ii) and thereafter applied in W.S. 6–5–206, there would be no need for the crime of interference with a peace officer.

2. From the facts of this case, it is clear that appellant was not under the particularly described detention as enumerated in W.S. 6–5–201(a)(ii). Therefore, we will discuss only whether appellant was under arrest at the time of his flight.

Accordingly, we determine that neither the instruction given the jury by the trial court nor the instruction submitted to the trial court by appellant regarding the term "official detention" gave a correct definition of that term as it is used under the applicable Wyoming statutes and present Wyoming case law.

■ If an appellant shows that error in an instruction amounts to "harmful error" or, in other words, is injurious or prejudicial to his case, reversal is required. *Miller*, 755 P.2d 855; *Noetzelmann v. State*, 721 P.2d 579 (Wyo.1986). An examination of the record in this case and a review of the briefs submitted by both parties indicate appellant has sufficiently shown that the giving of the State's instruction amounted to harmful error in this instance. If the jury had been given a proper instruction regarding the word "arrest" within the term "official detention," it may have reached a different conclusion.

We therefore hold that the trial court properly rejected appellant's instruction but that the trial court erred when it admitted the State's instruction.

In summary, we hold that appellant's conviction of aggravated assault and battery is affirmed and that his conviction for the crime of escape is set aside, and we order that a new trial be held with the State's consent regarding the crime of escape.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

THOMAS, J., filed a concurring and dissenting opinion.

THOMAS, Justice, concurring and dissenting.

I am in complete accord with the holding of the majority opinion that there was no error in failing to give the instruction which Phillips claimed set forth his theory of the case. The upshot of that is that his conviction for aggravated assault and battery is affirmed.

I respectfully dissent from the holding of the majority that the conviction for the crime of escape should be set aside. While the discussion of arrest in the instruction that was given may not be a model of clarity, in this instance, the court could have advised the jury that Phillips had been arrested as a matter of law. In my judgment, that feature of the case causes the claim of error to fall within Rule 49(a), W.R.Cr.P., which states:

"(a) *Harmless error.*—Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

I am not certain that the following statement from the majority opinion accurately describes the function of an appellate court:

"Therefore, under the circumstances of this case, it is necessary for us to determine whether Officer McAuslan had made an arrest at the time of appellant's flight." Ante at 392.

If that is our job, though, it is an easy task. The majority notes that Officer McAuslan put a handcuff on Phillips' arm. The reported cases that have afforded significance to applying handcuffs uniformly identify that as an arrest, sometimes to the advantage of the accused. E.g., *United States v. Berryhill*, 466 F.2d 621 (8th Cir. 1972), cert. denied 409 U.S. 1046, 93 S.Ct. 547, 34 L.Ed.2d 498 (1972); *Rodgers v. United States*, 362 F.2d 358 (8th Cir.1966), cert. denied 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454 (1966); *People v. Terry*, 240 Cal.App.2d 681, 50 Cal.Rptr. 120 (1966); *Chance v. State*, Fla.App., 202 So.2d 825 (1967); *People v. Robbins*, 54 Ill.App.3d 298, 12 Ill.Dec. 80, 369 N.E.2d 577 (1977); *Peterson v. State*, 250 Ind. 269, 234 N.E.2d 488 (1968); *People v. Calhoun*, 73 A.D.2d 972, 424 N.Y.S.2d 247 (1980); *Commonwealth v. Roscioli*, 240 Pa.Super. 135, 361 A.2d 834 (1976). However the concept of arrest might be defined, the ineluctable conclusion is that Phillips was arrested when he was handcuffed by McAuslan. Consequently, the only instruction which would have been pertinent under these circumstances would have been for the district judge to advise the jury that, if they

found that he had been handcuffed, he was under arrest.

It well may be that, in the future, our attorneys and judges should give additional attention to the definition of an arrest. Probably, it is best that they look beyond *Rodarte v. City of Riverton*, Wyo., 552 P.2d 1245 (1976), and consider persuasive authority from other jurisdictions.