EFFRON, Judge
(concurring in part and dissenting in part):
I agree with the lead opinion’s conclusion that, at a minimum, a remand is necessary to address the violation of appellant’s right to reasonably prompt post-trial processing. I also agree with the lead opinion’s conclusion that under the Fourth Amendment, U.S. Const, amend. IV, and RCM 302, Manual for Courts-Martial, United States (2000 ed.), a *303 Department of Defense (DD) Form 553 is not the equivalent of a civilian arrest warrant. For the reasons set forth below, I respectfully disagree with the lead opinion’s conclusion that no relief is warranted with respect to the violation of appellant’s rights under the Fourth Amendment and R.C.M. 302.
The Naval Criminal Investigative Service (NCIS) agents entered a private home without a valid warrant to apprehend appellant for unauthorized absence. 57 MJ at 289-90. According to the military judge, their subsequent search of appellant’s belongings was not justified by exigent circumstances, such as protection of the safety of the NCIS agents, and did not otherwise constitute a valid search incident to apprehension. In light of these considerations, the critical issue in this case is whether the Fourth Amendment violation impermissibly tainted appellant’s subsequent consent to the search of his belongings.
The lead opinion relies on Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), for the analytical framework. Brown involved the admissibility of a confession obtained after an illegal arrest. As noted in the lead opinion, the Supreme Court identified the critical issue as whether the statement was “the product of free will,” which it viewed as an issue to be “answered on the facts of each case” in which “[n]o single fact is dispositive.” 57 MJ at 290-91 (quoting Brown, 422 U.S. at 603, 95 S.Ct. 2254). The Court emphasized the importance of considering admissibility “in light of the distinct policies and interests of the Fourth Amendment,” and identified three relevant factors: (1) “[t]he temporal proximity of the arrest and the confession”; (2) “the presence of intervening circumstances”; and (3) “particularly, the purpose and flagrancy of the official misconduct.” Brown, 422 U.S. at 604, 95 S.Ct. 2254. In Brown, despite the fact that appellant’s statements were preceded by rights warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court concluded that under the particular circumstances of the case, the government had failed to meet its burden of showing that the evidence should have been admitted. 422 U.S. at 604-05, 95 S.Ct. 2254.
In the present case, the lead opinion applies the Brown factors by analogy to assess whether appellant’s consent to the seizure and search of his knapsack and duffel bag, and the confession obtained as a result of that search, were the product of circumstances sufficiently attenuated from the Fourth Amendment violations. It proceeds on the assumption that the first two factors—temporal proximity and intervening circumstances—favor appellant. See 57 MJ at 292. Assuming that Brown is applicable to the present case,[1] the validity of the consent under the lead opinion’s analytical framework turns on Brown’s third factor— the purpose and flagrancy of the official misconduct.
The Government bears the burden of demonstrating attenuation of appellant’s consent from the preceding illegalities by clear and convincing evidence. Mil.R.Evid. 314(e)(5), Manual, supra; see also Florida v. Royer, 460 U.S. 491, 507-08, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). For the reasons set forth below, the Government did not carry its burden in the present ease.

DISCUSSION

The draft opinion concludes that the consent was sufficiently attenuated under Brown’s third factor, relying on Special Agent (SA) Edward M. Coyle’s belief that he had a valid warrant to apprehend appellant for unauthorized absence, his concern for safety during the apprehension, and his use of a form that advised appellant of his right to refuse permission for the search. 57 MJ at 293-94. SA Coyle’s actions, however, went far beyond these considerations, providing substantial evidence of purposeful and *304 flagrant conduct in disregard of applicable restrictions on search and seizure.
1. Purpose
The record indicates that although SA Coyle believed he had a valid warrant to apprehend appellant for desertion, the primary purpose of the law enforcement activity at issue was to search and seize appellant’s knapsack in furtherance of the ongoing fraud investigation. SA Coyle had been advised that “whenever [appellant] went out, he carried ... a black knapsack, which was known to carry ... fraudulent credit cards or stolen credit cards and credit card receipts.” When SA Coyle went to the private residence to apprehend appellant, he knew that he lacked probable cause to obtain a warrant to search for evidence of the aforementioned financial crimes, and that he could not seize appellant inside a third party’s home without a search warrant. His plan was to set up surveillance on the private residence, wait for appellant to depart, apprehend him outside, and seize the knapsack incident to the apprehension. See Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Wilson v. Layne, 526 U.S. 603, 611, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Despite his stated belief that he could not enter the premises without a search warrant, SA Coyle entered anyway, in the absence of either exigent circumstances or the homeowner’s consent.
Even if SA Coyle had a reasonable belief that the DD Form 553 was a substitute for a civilian arrest warrant, his actions exceeded the scope of authority that would have inhered in an arrest warrant, including the limited authority to take protective actions. See Discussion, infra part 2. Once SA Coyle apprehended appellant three feet inside the home of Hospital Corpsman Second Class (HM2) Tom Guest, the arrest was complete and further entry was not authorized. See Payton, supra; United States v. Albrektsen, 151 F.3d 951, 954-55 (9th Cir.1998); see also Dunaway v. New York, 442 U.S. 200, 218, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)(quoting Brown, 422 U.S. at 605, 95 S.Ct. 2254).[2] The disregard of well-established principles of law by an experienced law enforcement officer underscores the purposeful and flagrant nature of the Fourth Amendment violations.
2. Safety
When executing an arrest warrant in a home, law enforcement officials may conduct a protective sweep incident to the arrest if they have “a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[s] the officer in believing that the area swept harbor[s] an individual posing a danger to the officer or others.” Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)(quoting Michigan v. Long, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The search must be “narrowly confined to a cursory visual inspection of those places in which a person might be hiding,” and, consistent with Payton, may last “no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.” Id. at 335-36, 110 S.Ct. 1093. Likewise, if lawfully within the premises to make an arrest, the police may search the premises in order to locate the individual to be arrested. Id. at 330, 110 S.Ct. 1093.
In this case, even if SA Coyle had possessed a valid arrest warrant, his conduct far exceeded the authority that would have been provided by such a document. Under Pay-ton and Buie, requirements which would have been well-known to an experienced law enforcement official such as SA Coyle, with a decade of field experience, an arrest warrant would have conferred the limited authority to: (1) enter the home, which according to SA Coyle involved a distance of only three *305 feet; (2) locate and apprehend appellant in the foyer; and (3) remove appellant from the premises. See Albrektsen, 151 F.3d at 955 (“[T]he mere existence of an arrest warrant does not authorize entry into a defendant’s home, where there is no necessity to enter because the defendant can be arrested at the threshold”); Horton v. California, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)(“If the scope of the search exceeds that permitted by the terms of a validly issued warrant ... the subsequent seizure is unconstitutional without more”). Once the law enforcement officials entered the dwelling and apprehended appellant in the foyer, appellant’s seizure for unauthorized absence—“the objective of the authorized intrusion”—was complete. See Wilson, 526 U.S. at 611, 119 S.Ct. 1692. Nevertheless, the NCIS agents did not remove appellant from the premises, but instead, continued the intrusion into the home to further the aims of a separate matter—the fraud investigation. They moved appellant into the living room, searched the couch for weapons, placed him on the couch, retrieved a consent to search form from their automobile, procured appellant’s signature on the consent form, obtained HM2 Guest’s consent to search the home for appellant’s belongings, seized the knapsack and a duffel bag, and then departed.
Although it was well within his authority to take actions necessary to protect his safety and the safety of his fellow law enforcement officers, SA Coyle’s actions reflect that his concern over the contents of the knapsack prevailed over concerns about safety. He not only failed to conduct a protective sweep of the residence upon entry, but he also sent a lone agent upstairs with the owner of the residence to secure appellant’s duffel bag. SA Coyle went well beyond the steps necessary to apprehend appellant and remove him from the residence—out of the range of potential weapons and accomplices. Instead, SA Coyle moved appellant further into the residence. He moved appellant from the foyer, where the items were not within appellant’s reach, into the living room, near the items he wanted to search. Such actions make it inappropriate to rely on officer safety as a basis for sustaining the consent under Brown, and underscores the purposefulness of the Fourth Amendment violations. Cf. United States v. Mason, 523 F.2d 1122, 1126 (D.C.Cir.1975) (officers conducting an arrest may not “lead the accused from place to place and use his presence in each location to justify a ‘search incident to arrest’ ”).
3. The Consent Form
The lead opinion notes that the form used to record appellant’s consent stated that he could refuse to grant permission to search. The lead opinion contends that because there is no legal requirement to provide such advice, provision of such advice suggests that the NCIS agents were not attempting to exploit the illegality and, therefore, did not act in a purposeful or flagrant manner. 57 MJ at 293.
It is noteworthy that the information at issue was contained in a preprinted form, and was not verbally communicated to appellant. Appellant was apprehended at 1:25 p.m., and he signed the consent form within 15 to 20 minutes of his apprehension while surrounded by four NCIS agents. Although the record reflects that appellant was advised orally of his rights against self-incrimination under Article 31, Uniform Code of Military Justice, 10 USC § 831, the record does not reflect any oral advice of his right to refuse consent to the search. Instead, the only evidence of advice regarding the search was the small print on the consent form that was provided to appellant in the immediate environment of his apprehension. Under these circumstances, use of a preprinted form does not satisfy the Government’s burden to show that the officer’s conduct was neither purposeful nor flagrant. Cf. United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir.1994)(use of a consent form following a lengthy conversation between the officer and accused indicated a lack of flagrant officer conduct when the officer also explained in English and Spanish that appellant had a right to refuse consent). Furthermore, advisement of rights alone does not act to sever the taint of the prior illegality. Brown, 422 U.S. at 603, 95 S.Ct. 2254.
*306 4. Conclusion
SA Coyle sought to secure appellant’s knapsack in furtherance of a financial fraud investigation. He lacked probable cause to seize this item, so he sought to capitalize on an unrelated charge of unauthorized absence as a means of apprehending appellant while carrying the knapsack. His plan did not work as he had hoped, however, because he confronted appellant when he was not carrying the knapsack. The scope of the DD Form 553 relied upon by SA Coyle was limited to apprehension for unauthorized absence, and the actions of the NCIS agents in making that apprehension went far beyond the requirements for an apprehension or protection of officer safety.
The lead opinion suggests that SA Coyle acted with a subjective good faith belief that his actions were permissible. 57 MJ at 293-94. We need not reach a judgment, however, as to his subjective beliefs. The attenuation analysis in Brown cautions against reliance on the subjective good faith of a law enforcement officer, particularly with regard to assessing the purposefulness and flagrancy of the law enforcement officer’s conduct. Brown’s attenuation analysis is designed to ameliorate the societal costs of employing the exclusionary rule by precluding its application at the point where it loses its deterrent effect. As the Supreme Court noted in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), “[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be ‘secure in their persons, house, papers, and effects’ only in the discretion of the police.” Id. at 915 n. 13, 104 S.Ct. 3405 (quoting Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). We should evaluate an officer’s conduct by considering whether a reasonably well-trained officer would have acted similarly under the circumstances. Id. at 923, 104 S.Ct. 3405; see also Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)(“reasonably well-trained officer” is standard for assessing whether an officer is entitled to qualified immunity for applying for a warrant that is subsequently held invalid for lack of probable cause). In the present ease, a reasonably well-trained officer should have known that the scope of the law enforcement investigation undertaken after apprehension of appellant was not permissible under well-established law.
Under these circumstances, the Government has not met its burden to demonstrate the validity of the consent under the third prong of Brown. I also agree with Judge Gierke’s conclusion that the Government has not met its burden under applicable voluntariness standards. The evidence obtained as a result of the search, including appellant’s related confession, should have been suppressed. Our Court should set aside the affected findings and the sentence, and authorize a rehearing.

. But cf. People v. Robbins, 54 Ill.App.3d 298, 12 Ill.Dec. 80, 369 N.E.2d 577, 581 (1977)(holding that the Brown analysis ordinarily is not necessary when an illegal search constitutes the "poisonous tree” that produces a confession because ”[c]onfronting a suspect with illegally seized evidence tends to induce a confession by demonstrating the futility of remaining silent.”)

. It is noteworthy that the military judge expressly found that, at the time of the officers’ entry: No exigent circumstances existed requiring immediate apprehension of [Appellant]. [Appellant] made no effort to escape and engaged in no peculiar actions. NCIS knew of no evidence that could be destroyed or secreted away, and [SA] Coyle had with him enough back up agents to secure the premises and obtain a separate warrant had he chosen to do so.